UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

PATRICIA ELIZABETH JAMES, ET AL

VERSUS

HAVEN HOMES SOUTHEAST,
INC., ET AL

CIVIL ACTION

NO. 08-770-JJB-CN

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants' The Haven Group, Inc ("Haven") and Pella Corp.'s Motion for Summary Judgment (doc. 41).   Co-Plaintiffs Patricia Elizabeth James ("James") (doc. 43), The Patricia Elizabeth James Trust ("the Trust") (doc. 43) and Dejean Development Corp. ("Dejean") (doc. 49) filed oppositions, to which Defendants replied (doc. 50).  This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332.  For the reasons addressed herein, the Court GRANTS Defendant's Motion for Summary Judgment, in part, and DENIES, the Motion, in part.

The following facts are undisputed.   On August 8, 2007, Co-Plaintiff Dejean entered into a Master Home Purchase Agreement[1] ("Agreement") on behalf of Co-Plaintiff James ("James")  with Co-Defendant, The Haven Group,

---

[1] The agreement contained the following provisions:
- *Warranties and Disclaimers.*  First, Haven warranted "against defects in workmanship" (doc. 41, exhibit B).  A separate clause extended this warranty "to Purchaser" and "the customer of the purchaser" (doc. 41, exhibit B).  Second, Haven disclaimed any express or implied warranties (doc. 41, exhibit B).
- *Governing Law.*  The Agreement stated that it was to be governed by South Carolina law (doc. 41, exhibit B, ¶ 18).

Inc.[2] (doc. 41, exhibit B).    Under the terms of the Agreement, the "Manufacturer"—Haven—was required to manufacture sections of a modular home for the "Purchaser," who was required to accept delivery at the site where the home was ultimately to be constructed—a site in Prarieville, Louisiana owned by the Trust (doc. 41, exhibit B, ¶ 3).  On October 31, 2007, Haven delivered the modular units to the site, and the home was thereafter assembled, but during the process its bellyband[3] was not installed (doc. 41, exhibit A, p. 42).

On December 15, 2007, James experienced the first water intrusion at her home, after which she contacted Haven, who sent an employee to investigate (doc. 41, exhibit A, p. 41).  At that time, neither the bellyband nor a permanent metal roof had been installed (doc. 41, exhibit A, p. 36).

On January 17, 2008, James experienced another water intrusion (doc. 41, ¶ 11).  On January 24, 2008, Haven representative Lem Morgan ("Morgan") visited the home, installed the bellyband, re-taped the windows and tested for leaks, but James suffered another water intrusion on January 31, 2008 (doc. 41, ¶¶ 12, 13).  As of January 31, 2008, a permanent metal roof had still not been installed (doc. 41, ¶ 12).

Due to the continued leaking, on June 12, 2008, Haven hired Chaisson Building Inspection Services ("Chaisson") to locate the source of the leaks (doc.

---

[2] The Haven Group, Inc. is the successor to Haven Homes Southeast, Inc., who was the party to the applicable contracts.

[3] Two-story modular homes contain a gap between the sections comprising the first and second floors. Typically a "bellyband" is put in place to fill-in this gap and to prevent leaks.

43, exhibit B, p. 8).   Chaisson determined that the leak was caused by the improper installation of the windows by Haven (doc. 43, p. 9).   On July 29, 2008, Haven hired a second inspector, IBACOS, who determined that the intrusions were not caused by the windows, but by other components of the house (doc. 43, exhibit C, pp. 55, 57, 59).

On October 31, 2010, Plaintiffs filed suit against Haven and the manufacturer of the windows, Pella Corp. (doc. 1, exhibit 1).   Plaintiffs claim that Haven breached its warranty obligations by failing to manufacture or install the components of the house in a workmanlike manner, in accordance with the Agreement[4] or in accordance with its own specifications (doc. 5, ¶ 34).   Plaintiffs also claim that Haven (1) breached the warranty against redhibitory defects under Louisiana Civil Code article 2520; (2) breached its obligations as a "builder" under the New Home Warranty Act ("the NHWA")[5]; and (3) negligently manufactured the home's components in violation of Louisiana Civil Code article 2315.   On January 22, 2010, Dejean filed its Complaint in Intervention against Haven and Pella asserting the same claims (doc. 12).

On August 31, 2010, Defendants filed their Motion for Summary Judgment as to all of Plaintiffs' claims (doc. 41).   Defendants assert that (1) the warranties provided by the Agreement do not apply to James because Haven contracted

---

[4] Plaintiffs claim that James was the intended beneficiary of the contract between Haven and Dejean and is entitled to recover damages resulting from the breach of the agreement under Louisiana Civil Code article 1978.

[5] Louisiana Revised Statute 9:3143.

only with Dejean, and that Haven nonetheless delivered the units free from any defects or, alternatively, corrected any defects; (2) that, according to the choice-of-law provision in the Agreement, the dispute is to be governed by South Carolina law, and thus Plaintiffs' Louisiana law claims must be dismissed; (3) that Plaintiffs waived all warranties except the warranty against defects in workmanship; and (4) Haven is not a "builder" and is thus not subject to the NHWA (doc. 41).

Summary judgment is appropriate if the evidence establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. Rule Civ. P. 56(c).  The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

**Plaintiff's claims for breach of the express warranty against defects in workmanship**

In their Motion for Summary Judgment, Defendants argues that the provision in the Agreement warranting against defects in workmanship does not apply to James because she was not a party to the contract (doc. 41). Defendants also claim that even if the warranty applies, Haven delivered the modular units free from any defects (doc. 41, p. 10).  Alternatively, Defendants

4

assert that, to the extent there were any defects, Haven complied with its obligation to repair them by re-taping the windows, and that the windows have not leaked since doing so (doc. 41, p. 10).   Lastly, Defendants argue that Plaintiffs' failure to timely install the home's bellyband or install a permanent metal roof is the cause of the leaks (doc. 41, p. 10).

In their opposition, Plaintiffs claim that the provision in the Agreement warranting against defects in workmanship applies to James because the warranty extended not only to the "Purchaser,"—Dejean—but to the "customer of the Purchaser"—James.   Plaintiffs also claim that Haven is liable for breaching the warranty against defects in workmanship by failing to properly install the Home's windows in accordance with the manufacturer's instructions, and that Haven's failure is the cause of the leaks (doc. 43, p. 5, 12).   Lastly, Plaintiffs claim that the windows have leaked since Defendant taped them, and that the re-taping will ultimately allow future water intrusions (doc. 43, p. 6).

First, the Court finds that Haven's warranty against defects in workmanship plainly extends to James.   Haven explicitly warranted "against defects in workmanship . . . which are reported to Haven within one (1) year of delivery to purchaser" (doc. 41-3, exhibit B).   Moreover, the Agreement states: "The warranties herein shall extend to Purchaser and to the *customer of the purchaser*" (doc. 41-3, exhibit B) (emphasis added).   Here, even if James was not the "Purchaser" under the contract, she was plainly the "customer" of the

5

"Purchaser" and so Haven is liable to James if it is ultimately found to have breached the warranty against defects in workmanship.

However, the Court also finds that a grant of summary judgment is improper because there remain genuine issues of material fact as to whether Haven violated the warranty against defects in workmanship.  Defendants' expert has testified that the windows were properly installed and are not the source of the leaks while Plaintiffs' experts have testified that Haven did not install the windows in accordance with the manufacturer's instructions and its failure to do so caused the intrusions (doc. 43, exhibit A, pp. 41-56); (doc. 43, exhibit B, pp. 7-8, 36-37).  Plaintiffs' expert also testified that the re-taping is insufficient to prevent the windows from leaking in the future and will ultimately cause more damage by trapping water (doc. 43, exhibit A, pp. 80-81); (doc. 43, exhibit B, pp. 33-34).  The Parties also offer competing evidence as to whether the windows have leaked since Haven's representative re-taped them in late-2008 (doc. 41, exhibit A, p. 77; doc. 47).  Moreover, Defendants and Plaintiffs offer competing evidence on whether, or the extent to which, the delay in installing the bellyband caused or contributed to the water intrusion (doc. 43, exhibit A, pp. 80-81); (doc. 43, exhibit B, pp. 33-34).

Thus, Defendants have failed to establish that there are no genuine issues of material fact as to whether Haven breached its warranty against defects in workmanship and whether its breach caused Plaintiffs' injuries.  Therefore, the

Court DENIES Defendants' Motion for Summary Judgment as to Plaintiffs' claims for breach of the warranty against defects in workmanship (doc. 41).

**Plaintiff's redhibition and NHWA claims**

In its Motion for Summary Judgment, Defendants argue that the Agreement is governed by South Carolina law, and so Plaintiffs have no right to relief for their claims arising under Louisiana law (doc. 41, p. 8). Defendants claim that under Louisiana conflict of laws principles, the application of the law chosen by the parties does not violate a strong public policy of the State, and therefore South Carolina law applies (doc. 41, p. 8).

Plaintiffs argue that the application of South Carolina law—which would nullify Plaintiffs' redhibition and NHWA claims—violates Louisiana's strong public policy of affording home owners minimum warranties for defects in workmanship on new homes (doc. 43, p. 13).

Because this Court is exercising diversity jurisdiction over the dispute, conflicts of law principles of the forum state, Louisiana, apply to determine if the choice of law provision is enforceable. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Issues pertaining to contracts—other than capacity and form—"are governed by the law expressly chosen . . . by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable." La. Civ. Code Ann. art. 3540. Generally speaking, Louisiana courts uphold the parties' choice-of-law provision unless it violates a strong public policy of the State. *Curtis Callais Welding, Inc. v. Stolt Comex*

7

*Seaway Holdings, Inc.*, 129 F. App'x 45, 52 (5th Cir. 2005).  Moreover, Louisiana Courts have generally found that provisions negating statutory warranties do not violate strong public policy.  *See, e.g.*, *Tassin v. Slidell Mini-Storage, Inc.*, 396 So.2d 1261, 1264 (La.1981) (upholding waiver of statutory lease warranty which warrants against vices or defects in movables or immovables); *La. Nat'l Leasing Corp. v. ADF Serv., Inc.,* 377 So.2d 92, 95 (La.1979) (same); *First Cont'l Leasing Corp. v. Howard*, 618 So.2d 642, 644 (La. App. 2d Cir.1993) (same); *Rey v. Cuccia*, 298 So.2d 840, 842 (La. 1974) (upholding waiver of statutory sale warranty which warrants against vices or defects in movables or immovables); *Hob's Refrigeration & Air Conditioning,  Inc. v. Poche*, 304 So.2d 326, 326 (La. 1974) (same).

The Court finds that South Carolina Law governs the parties' dispute. Paragraph eighteen of the Agreement plainly states that it "shall be governed by [and] construed in accordance with the laws of the State of South Carolina." (doc. 41, exhibit B).   Moreover, the Court finds that application of the choice of law provision does not violate any strong public policy of the State, and Plaintiffs have failed come forth with any cases refuting so.  Though the State of Louisiana has statutorily provided its citizens with warranties in numerous contexts, its courts have consistently held that parties to a contract may disclaim those warranties, as is the case here.

Because South Carolina law governs the dispute, the Plaintiffs can plead no set of facts entitling it to prevail as a matter of law, and thus the Court

GRANTS Defendants' Motion for Summary Judgment as to those Plaintiffs' redhibition and NHWA claims.

## <u>Conclusion</u>

Accordingly, because Defendants have failed to establish that there are no genuine issues of material fact as to whether Haven breached its warranty against defects in workmanship, the Court DENIES Defendants' Motion for Summary Judgment (doc. 41), in part.  However, because South Carolina law governs the parties dispute, Plaintiffs cannot establish a right to relief based on Louisiana redhibition law or the NHWA, and so the Court GRANTS Defendants' Motion for Summary Judgment (doc. 41), in part.

Signed in Baton Rouge, Louisiana, this 26th day of October, 2010.

_____

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**